**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEREMY GREENE and CETARIA WILKERSON, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GERBER PRODUCTS CO., a corporation, d/b/a NESTLE NUTRITION, NESTLE INFANT NUTRITION, and NESTLE NUTRITION NORTH AMERICA,<br><br>        Defendants. | No. 16-cv-1153<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY, AND STRIKE ALLEGATIONS FROM PLAINTIFFS' CLASS-ACTION COMPLAINT** |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 2

   A.   The FDA rejects Gerber's proposed health claims. ........................................... 2

   B.   Gerber deceptively markets and sells Good Start. ............................................. 3

   C.   Other consumers and entities challenge Gerber's labeling and marketing. ........................ 4

III.   ARGUMENT ........................................................................................................ 5

   A.   Plaintiffs state claims under the consumer-protection statutes of North Carolina and Ohio. .......................................................................................................... 6

      1.   Plaintiffs allege that Gerber's advertisements were false and misleading. ...................... 6

      2.   Not only does Rule 23 preempt the OCSPA's notice requirements, but those requirements are met here. ................................................................................... 10

      3.   Consumers have standing under the ODTPA. ................................................. 14

      4.   Ms. Wilkerson's NCUDTPA claim is pled with particularity. ...................................... 14

   B.   Plaintiffs sufficiently state common-law claims. ............................................. 15

      1.   Plaintiffs sufficiently allege unjust enrichment. ............................................. 16

      2.   Plaintiffs sufficiently allege intentional misrepresentation. .......................................... 16

      3.   Plaintiffs sufficiently allege negligent misrepresentation. .......................................... 17

      4.   Plaintiffs sufficiently allege fraudulent concealment. ................................................... 18

   C.   The primary-jurisdiction doctrine is irrelevant here. ........................................ 18

D.   Plaintiffs have third-party standing to seek injunctive relief. ............................................ 21

E.   Plaintiffs' class allegations are sufficient. ........................................................................ 21

IV.   CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*ABB, Inc. v. Workstations Exp., LLC*,

    No. 1:11-CV-241, 2012 WL 967060 (N.D. Ohio Mar. 21, 2012) .............................................. 6

*Abrams v. Gen. Motors Corp.*,

    466 N.Y.S.2d 124 (N.Y. Sup. Ct. 1983) ................................................................................ 18

*Ackerman v. Coca-Cola Co.*,

    No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...................................... 19

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,

    404 F.3d 566 (2d Cir. 2005)................................................................................................ 17

*Allegrino v. Sachetti*,

    No. 3:14-CV-01865-VAB, 2015 WL 3948986 (D. Conn. June 29, 2015).............................. 11

*Altria Group v. Good*,

    555 U.S. 70 (2008).............................................................................................................. 8

*Bank v. Am. Home Shield Corp.*,

    No. 10-CV-4014, 2013 WL 789203 (E.D.N.Y. Mar. 4, 2013)......................................... 22, 23

*Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*,

    501 F. Supp. 2d 738 (M.D.N.C. 2007) .................................................................................. 6

*Belfiore*,

    94 F. Supp. 3d ................................................................................................................... 22

*Blagman v. Apple Inc.*,

    No. 12 CIV. 5453 ALC JCF, 2013 WL 2181709 (S.D.N.Y. May 20, 2013) .......................... 22

*Bower v. Int'l Bus. Machs., Inc.*,

    495 F. Supp. 2d 837 (S.D. Ohio 2007) ................................................................................ 14

iv

*Brass*,

  987 F.2d ......................................................................................................... 18

*Brown v. GNC Corp.*,

  789 F.3d 505 (4th Cir. 2015) ....................................................................... 7, 10

*Bruton v. Gerber Prods. Co.*,

  961 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................................................ 19

*Bustamante v. Napolitano*,

  582 F.3d 403 (2d Cir. 2009)........................................................................... 14

*Calibuso v. Bank of Am. Corp.*,

  893 F. Supp. 2d 374 (E.D.N.Y. 2012) ......................................................... 22, 24

*Cardoza v. Bloomin' Brands, Inc.*,

  No. 2:13-CV-01820-JAD, 2014 WL 3748641 n.50 (D. Nev. July 30, 2014)........................... 22

*CBP Res., Inc. v. SGS Control Servs.*,

  394 F. Supp. 2d 733 (M.D.N.C. 2005) ............................................................ 14

*Charvat v. Telelytics, LLC*,

  No. 05AP-1279, 2006 WL 2574019 (Ohio Ct. App. Aug. 31, 2006)....................................... 13

*Cicchetti v. Davis*,

  No. 07 CIV. 10546 (WCC), 2008 WL 619013 (S.D.N.Y. Mar. 5, 2008)................................ 21

*Clomon v. Jackson*,

  988 F.2d 1314 (2d Cir. 1993)............................................................................ 8

*Cox v. Microsoft Corp.*,

  8 A.D.3d 39, 778 N.Y.S.2d 147 (2004) .............................................................. 16

*Craig v. Boren*,

    429 U.S. 190 (1976) ................................................................................................ 21

*Davenport v. Wendy's Co.*,

    No. 2:14-CV-00931 JAM, 2014 WL 3735611 (E.D. Cal. July 28, 2014) ............................... 23

*De Falco v. Vibram USA, Inc.*,

    No. 12 C 7238, 2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) .................................... 22

*De Sole v. Knoedler Gallery, LLC*,

    974 F. Supp. 2d 274 (S.D.N.Y. 2013) ................................................................. 18

*Ebin v. Kangadis Food Inc.*,

    297 F.R.D. 561 (S.D.N.Y. 2014) ..................................................................... 24

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.*,

    507 S.E.2d 56 (N.C, Ct. App. 1998) .................................................................. 7

*Foman v. Davis*,

    371 U.S. 178 (1962) ................................................................................. 25

*FTC v. Verity Int'l, Ltd.*,

    443 F.3d 48 (2d Cir. 2006) .......................................................................... 19

*Gitman v. Pearson Educ., Inc.*,

    No. 14 CIV. 8626 GBD, 2015 WL 5122564 (S.D.N.Y. Aug. 31, 2015) ............................... 22

*Glewwe v. Eastman Kodak Co.*,

    No. 05-CV-6462T, 2006 WL 1455476 (W.D.N.Y. May 25, 2006) ........................................ 23

*Gold*,

    2015 WL 7888906 ..................................................................................... 23

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,

    8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................. 16, 19

*Goodman v. Genworth Financial Wealth Management, Inc.*,

    300 F.R.D. 90 (E.D.N.Y. 2014) ................................................................................ 23

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,

    846 F.2d 848 (2d Cir. 1988) ..................................................................................... 19

*Hanna v. Plumer*,

    380 U.S. 460 (1965) .................................................................................................. 11

*Hilco Transp., Inc. v. Atkins*,

    No. 14 CVS 8677, 2016 WL 197133 (N.C. Super. Jan. 15, 2016) .......................... 14

*Hogan v. Novartis Pharm. Corp.*,

    No. 06 CIV. 0260 BMC RER, 2011 WL 1336566 (E.D.N.Y. Apr. 6, 2011) ........... 11

*Hughes v. Ester C Co.*,

    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................... 16, 17

*In re Aggrenox Antitrust Litig.*,

    No. 3:14-MD-2516 (SRU), 2016 WL 4204478 (D. Conn. Aug. 9, 2016)............... 11

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM,

    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)..................................................... 17, 19

*In re Grand Theft Auto Video Game Consumer Litigation*,

    251 F.R.D. 139 (S.D.N.Y. 2008) .............................................................................. 23

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,

    955 F. Supp. 2d 1311 (S.D. Fla. 2013) ..................................................................... 19

*In re Hydroxycut Mktg. & Sales Practices Litig.*,

    299 F.R.D. 648 (S.D. Cal. 2014) ................................................. 11

*In re Nigeria Charter Flights Contract Litig.*,

    233 F.R.D. 297 (E.D.N.Y. 2006) .......................................... 24, 25

*In re Operations NY LLC.*,

    490 B.R. 84 (Bankr. S.D.N.Y. 2013) ......................................... 16

*In re U.S. Foodservice Inc. Pricing Litig.*,

    729 F.3d 108 (2d Cir. 2013) ..................................................... 24

*King v. Palmer*,

    950 F.2d 771 (D.C.Cir.1991) ................................................... 11

*Kondaur Capital Corp. v. Cajuste*,

    849 F. Supp. 2d 363 (E.D.N.Y. 2012) ...................................... 11

*Liberty Mut. Ins. Co. v. Palace Car. Servs. Corp.*,

    No. 06–cv4881(FB)(CLP), 2007 WL 2287902 (E.D.N.Y. Aug. 8, 2007) .............................. 17

*Lockwood v. Conagra Foods, Inc.*,

    597 F. Supp. 2d 1028 (N.D. Cal. 2009) .................................... 19

*Lucas v. Chesapeake Expl., L.L.C.*,

    No. 2:12-CV-00592-JRG, 2013 WL 5200046 (E.D. Tex. Sept. 16, 2013) ............................. 22

*Lump v. Best Door & Window, Inc.*,

    Nos. 8-01-09, 8-01-10, 2002 WL 462863 (Ohio Ct. App. Mar. 27, 2002) ................................ 9

*Marshall v. Miller*,

    276 S.E.2d 397 (N.C. 1981) ...................................................... 9

*Mayfield v. Asta Funding, Inc.*,

    95 F. Supp. 3d 685 (S.D.N.Y. 2015) .................................................................. 24

*Miele v. Am. Tobacco Co.*,

    803, 770 N.Y.S.2d 386 (N.Y. App. Div. 2003) ..................................................... 18

*Miller v. Albright*,

    523 U.S. 420 (1998) .............................................................................................. 21

*Moore v. PaineWebber, Inc.*,

    306 F.3d 1247 (2d Cir. 2002) .......................................................................... 23, 24

*Motta v. Glob. Contract Servs. Inc.*,

    No. 15 CV 8555 (LGS), 2016 WL 2642229 (S.D.N.Y. May 4, 2016) ................... 22

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,

    No. 14-CV-7539 (MKB), 2016 WL 1274541 (E.D.N.Y. Mar. 31, 2016) ............... 22

*Nasaba Corp. v. Harfred Realty Corp.*,

    39 N.E.2d 243 (N.Y. 1942) .................................................................................. 18

*Nat'l Commc'ns Assoc., Inc. v. AT&T Co.*,

    46 F.3d 220 (2d Cir. 1995) ................................................................................... 19

*Pagan v. Abbott Laboratories, Inc.*,

    287 F.R.D. 139 (E.D.N.Y. 2012) .......................................................................... 23

*Parino v. BidRack, Inc.*,

    838 F. Supp. 2d 900 (N.D. Cal. 2011) .................................................................. 22

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,

    226 F.R.D. 456 (S.D.N.Y. 2005) .......................................................................... 23

*R.B. Dev., Co. v. Tutis Capital LLC*,

    No. 12CV1460CBASMG, 2015 WL 10567830 (E.D.N.Y. Nov. 6, 2015) ............................ 24

*Reed Elsevier, Inc. v. TheLaw.net Corp.*,

    269 F. Supp. 2d 942 (S.D. Ohio 2003) ................................................................ 7

*Reid v. GMC Skin Care USA Inc.*,

    No. 815CV277BKSCFH, 2016 WL 403497 (N.D.N.Y. Jan. 15, 2016)................................. 19

*Schumacher v. State Auto. Mut. Ins. Co.*,

    47 F. Supp. 3d 618 (S.D. Ohio 2014) ................................................................ 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,

    549 F3d 137 (2d Cir. 2008)........................................................................... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,

    559 U.S. 393 (2010)........................................................................ 10, 11, 12

*Sibbach v. Wilson & Co.*,

    312 U.S. 1 (1941)............................................................................... 11, 14

*Silverstein ex rel. Tetragon Fin. Grp. Ltd. v. Knief*,

    843 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................................ 11

*Stanley v. Bayer Healthcare LLC*,

    No. 11CV862-IEG BLM, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012)................................. 9

*Stoltz v. Fage Dairy Processing Indus., S.A.*,

    No. 14-CV-3826 MKB, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................. 5

*Strickland v. A & C Mobile Homes*,

    321 S.E.2d 16 (N.C. Ct. App. 1984) ................................................................ 16

*T.T. Exclusive Cars, Inc. v. Christie's Inc.*,

    No. 96 CIV. 1650 LMM, 1996 WL 737204 (S.D.N.Y. Dec. 24, 1996) .................................. 18

*Traxler v. PPG Indus., Inc.*,

    158 F. Supp. 3d 607 (N.D. Ohio 2016) .................................................................... 6

*United States v. Alcan Aluminum Corp.*,

    315 F.3d 179 (2d Cir. 2003) ................................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ......................................................................................... 23

*Whitaker v. M.T. Auto., Inc.*,

    855 N.E.2d 825 (Ohio 2006) ........................................................................... 7, 13

*Winfield v. Citibank, N.A.*,

    842 F. Supp. 2d 560 (S.D.N.Y. 2012) ................................................................. 22

*Wittman v. CB1, Inc.*,

    No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016) ............................ 11

*Zakaria,*

    *I*, 2015 WL 3827654 ............................................................................... passim

*Zakaria,*

    *II*, 2015 WL 4379743 .......................................................................... 7, 8, 10

## <u>Statutes</u>

N.C. GEN. STAT. ANN. § 75-1.1 (same) ...................................................................... 6

OHIO REV. CODE ANN. § 1345.02(B)(1), (2) .............................................................. 6

OHIO REV. CODE ANN. § 1345.02(C) ......................................................................... 9

OHIO REV. CODE ANN. § 1345.05(3) ......................................................................... 9

OHIO REV. CODE ANN. § 1345.05(A)(3) ................................................................... 12

OHIO REV. CODE ANN. § 1345.09(B)............................................................................ 10, 12

OHIO REV. CODE ANN. § 4165.01(D) ............................................................................ 14

OHIO REV. CODE ANN. § 4165.02(2), (3)....................................................................... 7

OHIO REV. CODE ANN. § 4165.02(7) (same) ................................................................ 6

OHIO REV. CODE ANN. § 4165.03(A)(2)........................................................................ 14

**Rules**

Fed. R. Civ. P. 15(a)(2)................................................................................................... 25

FED. R. CIV. P. 23(b)(3)(D) ............................................................................................ 23

Rule 23 ............................................................................................................................ 24

**Regulations**

OHIO ADMIN CODE 109:4–3–10 ..................................................................................... 6, 12

OHIO ADMIN. CODE 109:4-3-02 ...................................................................................... 12

**Other Authorities**

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-cv-00585 (AJN),

   2014 U.S. Dist. LEXIS 76752, at *46 (S.D.N.Y. June 3, 2014)............................. 19

Plaintiffs Jeremy Greene and Cetaria Wilkerson, individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in opposition to Defendant Gerber Products Co.'s Motion to Dismiss, Stay, and Strike Allegations from Plaintiffs' Class Action Complaint.

## I.  INTRODUCTION

Plaintiffs allege that Defendant made false and misleading statements regarding the allergenic benefits of its infant formula, Gerber Good Start Gentle ("Good Start"). In *Hasemann v. Gerber Products Co.* (No. 1:15-cv-02995-MKB-RER), this Court recently upheld nearly identical allegations against the same Defendant, based on the same advertisements. Both the *Hasemann* plaintiffs and Plaintiffs here allege that, in 2011, Gerber began claiming that Good Start reduces an infant's risk of developing allergies, generally, and suggesting that it would unequivocally reduce an infant's risk of developing atopic dermatitis (a particular kind of allergy). However, scientific studies had already disproven the idea that Gerber's formula can reduce the risk of allergies, generally, and the FDA had concluded that there was—at best— "very little" evidence supporting Gerber's atopic-dermatitis claims. Gerber's advertisements have since prompted a Warning Letter from the FDA, a suit by the FTC, and several class-action lawsuits around the country, including the one already before this Court. *See, e.g.*, Memorandum and Order, *Hasemann v. Gerber Prods. Co.*, No. 1:15-cv-02995-MKB-RER (E.D.N.Y. Sept. 28, 2016) ("*Hasemann*"), ECF No. 41; *Zakaria v. Gerber Prods. Co.*, No. 2:15-cv-00200-JAK-E (C.D. Cal. Feb. 27, 2015) ("*Zakaria I*"); Order, *Nat'l Consumers League v. Gerber Prods. Co.*, No. 2014 CA 008202 B (D.C. Super. Ct. Aug. 8, 2015) ("*Consumers League*"; attached as Ex. A).

In support of its motion to dismiss, Gerber raises a number of arguments that have

1

already been rejected by this Court in *Hasemann*, the court in *Zakaria*, and the court in *Consumers League*, including that—despite allegation in the Complaint of false and misleading advertising—Plaintiffs are actually attempting to bring lack-of-substantiation claims; that Defendant is free to exaggerate the scientific support for its allergy claims; and that this case should be stayed pending FDA administrative proceedings, despite the fact that there are no such proceedings. Respectfully, these arguments should be rejected here, too, and Gerber's motion to dismiss, stay, and strike should be denied.

## II. STATEMENT OF FACTS

### A. The FDA rejects Gerber's proposed health claims.

In June 2005, Gerber's parent company, Nestle, petitioned the FDA to authorize a qualified health claim that one of the ingredients in Good Start—partially hydrolyzed whey protein ("pHWP")—"may reduce the risk of common food allergy symptoms[.]" (*Id*. ¶¶ 5, 40; *id.* Ex. A (2006 FDA Letter).) On May 11, 2006, the FDA rejected the petition because "there is no credible evidence to support the qualified health claim relating . . . [pHWP] . . . to a reduced risk of food allergy[.]" (*Id*. Ex. A at 9; *id.* ¶¶ 6, 41.)

Switching tack, in May 2009, Gerber petitioned the FDA to authorize a qualified health claim characterizing the relationship between pHWP and the reduced risk of a specific infant allergy, atopic dermatitis. (*Id*. ¶¶ 8, 42; *id.* Ex. B (2011 FDA Letter).) In May 2011, the FDA rejected the language Gerber proposed because there was "very little credible evidence" supporting a link between pHWP and a reduction in the risk of atopic dermatitis. (*Id.* Ex. B at 10–11; *id.* ¶¶ 9, 43–44.) The FDA stated it would consider exercising its enforcement discretion only if Gerber emphasized that there was "little" or "very little" evidence supporting this claim. (*Id.* Ex. B. at 11; Compl. ¶¶ 9, 45.)

Subsequently, additional scientific studies affirmatively contradicted the idea proposed by Gerber in its first petition: that Good Start can lower the risk of allergic manifestations during infancy. (*See* Compl. ¶¶ 46–52.) For example, a 2011 study—funded by Nestle (*id.* ¶ 52)— concluded that "[t]here was no evidence that introducing [pHWP formula] . . . reduced the risk of allergic manifestations . . . in [a] study of high-risk infants."[1] As such, the Lowe Study did "not support the recommendation that [pHWP infant formula] should be used after breast-feeding as a preventative strategy for infants at high risk of allergic diseases."[2]

## B. Gerber deceptively markets and sells Good Start.

Despite these studies and the FDA's reactions to its allergy, in 2011, Gerber began advertising Good Start as the first and only formula (1) whose consumption reduces the risk of infants developing allergies, and (2) that the FDA fully endorses to reduce the risk of developing atopic dermatitis. (Compl. ¶¶ 3, 10, 53, 55.) Gerber's misrepresentations include the following:

- on a safety-seal sticker included on a formula canister, Gerber states that Good Start is the "1st & Only Routine Formula TO REDUCE THE RISK OF DEVELOPING ALLERGIES" (*id.* ¶ 56; *id.* Ex. C);

- on a gold badge that Gerber featured on exterior product packaging and on supermarket displays advertising Good Start, Gerber prints the words "MEETS FDA" at the top, "1st AND ONLY" in the center, and "QUALIFIED HEALTH CLAIM" at the bottom (*id.* at ¶¶ 57–59; *id.* Ex. D);

- in a television commercial, an announcer states that "You want your Gerber baby to have your imagination . . . your smile . . . your eyes . . . not your allergies. . . . [I]f you introduce formula, choose the Gerber Good Start Comfort Proteins Advantage" (*id.* ¶ 60; *id.* Ex. E);

---

[1] Adrian J. Lowe *et al.*, *Effect of a partially hydrolyzed whey infant formula at weaning on risk of allergic disease in high-risk children: A randomized controlled trial*, 128 J. Allergy & Clinical Immunology 2 (2011), at 360–65, *available at* http://www.jacionline.org/article/S0091-6749(10)00740-2/pdf (the "Lowe Study").

[2] *Id.* at 365.

- on a print advertisement depicting a baby's face on a canister of Good Start, the caption reads: "The Gerber Generation says 'I love Mommy's eyes, not her allergies.' If you have allergies in your family, breastfeeding your baby can help reduce their risk. And, if you decide to introduce formula, research shows the formula you first provide your baby may make a difference" (*id.* ¶ 61; *id.* Ex. F);

- in a magazine advertisement, Gerber deceptively promoted Good Start as "the first and only infant formula that meets the criteria for a FDA Qualified Health Claim" (*id.* ¶ 62; *id.* Ex. G); and

- in a magazine advertisement, Gerber depicts a mother feeding an infant and includes a badge stating Good Start is the "1st FORMULA WITH FDA QUALIFIED HEALTH CLAIM" (*id.* ¶ 63; *id.* Ex. H).

Gerber used these deceptive claims to attract customers and charge a higher price for Good Start than it otherwise could have (i.e., a price premium). (*Id.* ¶ 54.)

Plaintiff Jeremy Green, a resident of Ohio, began regularly purchasing Good Start after reviewing statements that highlighted Good Start's supposed FDA endorsement and its purported ability to protect infants from developing allergies. (*Id.* ¶¶ 15, 72; *see also id.* ¶ 74.) Plaintiff Cetaria Wilkerson, a North Carolina resident, also began frequently purchasing Good Start after reviewing statements that highlighted Good Start's supposed FDA endorsement and its purported ability to protect infants from developing allergies. (*Id.* ¶¶ 16, 73; *see also id.* ¶ 74.)

Plaintiffs would not have purchased Good Start at its inflated prices had they known that (1) partially hydrolyzed whey protein does not reduce the risk of allergies (including atopic dermatitis) in children or (2) the FDA did not endorse the health claims Gerber made on its labels and in its marketing. (*Id.* ¶ 78.)

### C. Other consumers and entities challenge Gerber's labeling and marketing.

The FTC has since brought suit against Gerber, seeking to enjoin it from claiming that Good Start "prevents or reduces the risk that [infants] will develop allergies" and that "[Good

4

Start] formula qualified for . . . a health claim from the [FDA]."[3] On October 31, 2014, the FDA
sent Gerber a warning letter informing it that Good Start's label contained unauthorized health
claims and was thus misbranded under the FDCA.[4]

Two months later, the National Consumers League filed a complaint against Gerber in
the Superior Court of the District of Columbia. On August 8, 2015, the court denied Gerber's
motion to dismiss. (Ex. A (*Consumers League* Order).) A similar complaint was filed in the
United States District Court for the Central District of California on behalf of a class of
California Good Start purchasers. On June 18, 2015, the court denied Gerber's motion to dismiss
in its entirety, *Zakaria I*, 2015 WL 3827654, and on July 14, 2015, it denied a motion to
reconsider, *Zakaria v. Gerber Prods. Co.*, No. LACV1500200JAKEX, 2015 WL 4379743 (C.D.
Cal. July 14, 2015) ("*Zakaria II*"). On May 21, 2015, another similar complaint was filed in this
Court. Complaint, *Hasemann*, No. 1:15-cv-02995-MKB-RER (E.D.N.Y. May 21, 2015). On
September 28, 2016, this Court denied Gerber's motion to dismiss.[5]

## III.  ARGUMENT

"In reviewing a motion to dismiss[,] . . . a court must accept all factual allegations in the
complaint as true and draw inferences from those allegations in the light most favorable to the
plaintiff." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL
5579872, at *11 (E.D.N.Y. Sept. 22, 2015) (internal quotation marks omitted). To state a claim

---

[3] Mem. Ex. 2 (Complaint at ¶¶ 2, 19–24, *FTC v. Gerber Prods. Co.*, No. 2:14-cv-06771-SRC-
CLW (D.N.J. Oct. 29, 2014), ECF No. 1); *see also* Compl. ¶¶ 11, 66–67.

[4] Compl. Ex. I (U.S. Food & Drug Admin., Warning Letter to Nestle Infant Nutrition (Oct. 31,
2014)); *id.* ¶¶ 12, 68–71.

[5] Gerber has also been sued in Missouri state court. Complaint, *Slocum v. Gerber Prods. Co.*,
16PT-CC00055 (Cty. Cir. Ct. Mo. Mar. 14, 2016).

for relief, "[a] complaint must plead enough facts" to indicate that the claim "is plausible on its face." *Id.* (internal quotation marks omitted).

### A. Plaintiffs state claims under the consumer-protection statutes of North Carolina and Ohio.

#### 1. Plaintiffs allege that Gerber's advertisements were false and misleading.

Plaintiffs have stated claims under the three consumer-protection statutes at issue here: the Ohio Consumer Sales Protection Act, the Ohio Deceptive Trade Practices Act, and the North Carolina Unfair and Deceptive Trade Practices Act (the "OCSPA," "ODTPA," and "NCUDTPA").

All three statutes recognize claims for false advertising,[6] and the Complaint repeatedly notes that Defendant's general allergy claims are false. A claim is "false"—and not just unsubstantiated—if it has been affirmatively discredited. *Hasemann*, at *42–44.[7] This Court recently held that the same advertisements at issue here were false given allegations that they had been scientifically disproven. *Id.* at *38–39. Here, Plaintiffs make the same allegations: Gerber claimed—in at least three of its advertisements—that Good Start could reduce an infant's risk of

---

[6] *See, e.g.*, *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 627–28 (N.D. Ohio 2016) (plaintiff stated a claim for false advertisement under the OCSPA); *ABB, Inc. v. Workstations Exp., LLC*, No. 1:11-CV-241, 2012 WL 967060, at *3–4 (N.D. Ohio Mar. 21, 2012) (plaintiff stated a claim for false advertisement under the ODTPA); *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F. Supp. 2d 738, 747 (M.D.N.C. 2007) ("Plaintiff's allegations that Defendants engaged in acts of false advertising are of the type that would constitute unfair and deceptive acts within the meaning of the [NCUDTPA]."); *see also* OHIO ADMIN CODE 109:4–3–10 (prohibiting false or unsubstantiated advertisements); OHIO REV. CODE ANN. § 1345.02(B)(1), (2) (prohibiting deceptive practices); OHIO REV. CODE ANN. § 4165.02(7) (same); N.C. GEN. STAT. ANN. § 75-1.1 (same).

[7] *See also* Memorandum and Order at 18 n.11, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB) (E.D.N.Y. Sept. 26, 2016) (Brodie, J.) ("*Sitt*"), ECF No. 32; *Zakaria I*, 2015 WL 3827654, at *9–10.

developing allergies, generally.[8] Before Gerber made these claims, the FDA rejected them as

being scientifically unsupported (Compl. ¶ 37–41), and subsequent studies affirmatively refuted

them, such as the Lowe Study, which concluded that there was "no evidence to support

recommending the use of pHWF . . . for the prevention of allergic disease" (Lowe Study at 360;

Compl. ¶¶ 46–52). This conclusion renders Gerber's general allergy claims *false*, as already

noted in *Hasemann*, *Zakaria I*, *Zakaria II*, and *Consumers League*.[9]

Plaintiffs also allege that Defendant's atopic-dermatitis claims were *misleading*. The

OCSPA, ODTPA, and NCUDTPA all prohibit misleading advertisements.[10] As acknowledged

by this Court in *Hasemann* and *Sitt*, as well as *Zakaria* and Defendant's own case—*Brown v.

GNC Corp.*, 789 F.3d 505 (4th Cir. 2015)—true claims that exaggerate scientific or agency

support are misleading.[11] Here, according to the 2011 FDA Letter, there was "little" or "very

little" scientific support for Defendant's atopic-dermatitis claims, and the agency would only

certify claims that contained these qualifications. (Compl. ¶¶ 9–10, 44–45; *id.* Ex. B at 13; *see

also id.* ¶ 57 n.1; *id.* Ex. B at 9–11.) Because none of Gerber's advertisements suggest these

qualifications—and instead aggressively indicate that Good Start will in fact reduce the risk of

---

[8] *See* Compl. Exs. C, E, F; *id.* ¶¶ 56, 60–61, 97–99, 119, 123, 129–130, 132.

[9] *Zakaria I*, 2015 WL 3827654, at *9–10; *Zakaria II*, 2015 WL 4379743, at *3; *Consumer's League*, at *8.

[10] *See, e.g.*, *Whitaker v. M.T. Auto., Inc.*, 855 N.E.2d 825, 830 (Ohio 2006) ("In general, the [OCSPA] defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving[.]"); *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 951 (S.D. Ohio 2003) ("false or misleading" claims are actionable under the ODTPA); *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 63 (N.C, Ct. App. 1998) ("[A] trade practice is deceptive [under the NCUDTPA] if it possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception." (second and third alterations in original) (internal quotation marks omitted)); *see also* OHIO REV. CODE ANN. § 4165.02(2), (3) (the ODTPA prohibits causing a "likelihood of confusion or misunderstanding").

[11] *Hasemann*, at *39–40, 41 n.22; *Sitt*, at *29–30; *Zakaria II*, 2015 WL 4379743, at *3; *see also GNC*, 789 F.3d at 516.

atopic dermatitis—Gerber misleadingly exaggerated the degree of scientific support for its atopic-dermatitis claims. (Compl. Exs. D, G, H; *id.* at ¶¶ 57–59, 62–63, 119, 121, 123, 129–130, 132–33.) And to the extent Gerber confusingly cited the FDA's qualified health claim in order to imply that Good Start unequivocally reduced the risk of atopic dermatitis, or that the FDA had unequivocally approved of the claims, those advertisements, too, were misleading;[12] as noted— again—by *Hasemann*, *Zakaria I, Zakaria II*, and *Consumers League*.[13] Plaintiffs have thus sufficiently alleged violations of the OCSPA, ODTPA, and NCUDTPA.[14]

Gerber's suggestion that Plaintiffs neglected to allege that its advertisements were false (or misleading) has already been rejected in *Hasemann*, *Zakaria* and *Consumers League*, and fails here for the same three primary reasons:

*First*, as just noted, large portions of the Complaint are dedicated to describing the false and misleading nature of Gerber's advertisements. (*See, e.g.*, Compl. ¶¶ 56–63, 97–99, 119, 121, 123, 129–130, 132–33; *id.* Exs. C–H.) Perhaps because of this, Gerber disputes this falsity with several procedurally inappropriate factual arguments:

- Gerber claims that the FTC's suit is not based on false advertising, but the agency's complaint states that it is.[15] More fundamentally, a claim is false regardless of whether the FTC decides to sue over it.[16]

---

[12] Compl. Exs. D, G, H; *id.* at ¶¶ 57–59, 62–63.

[13] *Hasemann*, at *39–41, 44; *Zakaria I*, 2015 WL 3827654, at *9; *Zakaria II*, 2015 WL 4379743, at *3; *Consumers League*, at *8–9; *see also Sitt*, at *29–30 (describing the misleading use of a USP certification).

[14] Plaintiffs also allege that Defendant's advertisements were false and misleading because they failed to mention that any potential atopic-dermatitis benefits would only be realized if Good Start was fed to 0–4-month olds (Compl. ¶ 64); a basis that Defendant does not appear to contest.

[15] Mem. Ex. 2 (FTC Complaint) at pp. 9, 10, ¶¶ 20.

[16] *See, e.g.*, *Altria Group v. Good*, 555 U.S. 70, 88–90 (2008) ("[A]gency nonenforcement of a federal statute is not the same as a policy of approval."); *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993) (FTC inaction "is not evidence that the FTC 'authoritatively interpreted' the [conduct] as lawful or even that the FTC gave the [conduct] its 'tacit approval'").

- Gerber cites the FDA letters as evidence that its atopic-dermatitis claims are not false, but even if the FDA found "very little" evidence to support these claims, Gerber could still have misleadingly concealed this lack of support. *Hasemann*, at *40–41. And, of course, this evidence has no bearing on whether Gerber's *general* allergy claims were false. *Id.* at *39.

- Gerber also suggests that the Lowe Study did not disprove any of its advertisements, but—as noted above—the study explicitly found that Gerber's general allergy claims were false. Gerber may be referring to its atopic-dermatitis claims, but even if the Lowe Study does not address atopic dermatitis, Gerber may still have overstated whatever support it did have for these claims. *Id.* at *40–41. In any event, "[f]actual disputes about whether the studies actually prove that [a product] is ineffective . . . cannot be resolved . . . on a motion to dismiss." *Sitt*, at *22; *see also Hasemann*, at *41 n.22; *Zakaria I*, 2015 WL 3827654, at *9.

*Second*, even ignoring the fact that Plaintiffs are *not* bringing lack-of-substantiation claims, such claims are allowed under Ohio and North Carolina law. Defendant points out that California prohibits lack-of-substantiation claims, but there such claims are barred by a state statute that does not exist in North Carolina or Ohio;[17] in fact, lack-of-substantiation claims are explicitly authorized in Ohio.[18] And while Gerber also notes that New Jersey consumer-protection claims cannot be based on FTCA violations, both North Carolina and Ohio have incorporated FTCA violations into their definitions of deceptive conduct.[19]

---

[17] *Stanley v. Bayer Healthcare LLC*, No. 11CV862-IEG BLM, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) (cited at page 8 of Defendant's brief).

[18] The OCSPA allows the Ohio attorney general to publish specific rules describing deceptive conduct under the statute. (OHIO REV. CODE ANN. § 1345.05(3).) One of these rules—Ohio Administrative Code 109:4-3-10—is titled "Substantiation of claims in advertising," and it forbids defendants from "[m]ak[ing] any representations . . . which would cause a reasonable consumer to believe such statements are true, unless . . . the supplier possesses . . . a reasonable basis in fact . . . which substantiates such representations[.]" (*See also* Mem. 12–13 (arguing that Defendant's atopic-dermatitis claims were substantiated, so Ohio's substantiation rule is irrelevant).)

[19] *See, e.g.*, *Lump v. Best Door & Window, Inc.*, Nos. 8-01-09, 8-01-10, 2002 WL 462863, at *9 (Ohio Ct. App. Mar. 27, 2002) (Walters, J., concurring) (the OCSPA "is a remedial law modeled after the [FTCA]"); *Marshall v. Miller*, 276 S.E.2d 397, 399 (N.C. 1981); OHIO REV. CODE ANN. § 1345.02(C). Defendant also cites cases for the idea that there is no private right of action

*Third*, Gerber's reliance on *GNC* is misplaced, as—again—this Court already concluded in *Hasemann. Id.* at *41 n.22.[20] Defendant cites *GNC* for the idea that an advertisement cannot be literally false if a plaintiff admits that it's supported by some scientific evidence. (Mem. 10–11.) However, (1) *GNC* didn't address any of the consumer-protection statutes at issue here and—anyway—wouldn't be controlling in Ohio or North Carolina (it's yet to even be cited by a court in these states); (2) Plaintiffs have never conceded that Defendant's general allergy claims are supported by any scientific evidence (they allege that it has been affirmatively refuted); and (2) Defendant's atopic-dermatitis claims can be illegally misleading even if not technically false—as *GNC* acknowledged and Plaintiffs allege here.[21] Plaintiffs have thus stated claims under the OCSPA, ODTPA, and NCUDTPA.

### 2. Not only does Rule 23 preempt the OCSPA's notice requirements, but those requirements are met here.

Defendant's argument that Plaintiff Greene never alleged prior notice under the OCSPA fails—first—because those notice requirements are preempted by Rule 23. Under the OCSPA, a plaintiff cannot bring a class action unless the defendant was on prior notice that its actions were deceptive. OHIO REV. CODE ANN. § 1345.09(B). In *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010), a majority of the Supreme Court held that state restrictions on class actions directly conflict with Rule 23, which describes the conditions under which class actions can be brought in federal court. *Id.* at 398–406. The Court fractured,

---

under the FDCA (Mem. 8–9), but Plaintiffs are not suing under the FDCA; they're suing under state law.

[20] *See also Zakaria II*, 2015 WL 4379743, at *2–3 (also rejecting Defendant's *GNC* argument); *Consumers League*, No. 2014 CA 008202 B, at *15–17 (same).

[21] *GNC*, 789 F.3d at 516; *supra* pp. 7–8.

10

however, on what to do next: four Justices thought that Rule 23—because it's actually procedural—trumps *any* state limitation, while Justice Stevens thought that Rule 23 should not trump where the *state limitation* is substantive. *Id.* at 406–15, 417–28. Because the portion of Justice Stevens's concurrence addressing substantive state laws is not a logical subset of the plurality opinion, it does not control;[22] and because there's no controlling opinion, courts must look to prior precedent.[23] Under that precedent, when the Federal Rules conflict with state law, the Federal Rules trump, so long as the Rule is procedural: that was the position taken by the Supreme Court in *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13–14 (1941), and *Hanna v. Plumer*, 380 U.S. 460, 470–74 (1965);[24] taken by a number of district courts in this Circuit;[25] and suggested

---

[22] Narrower concurrences only control where they are a "logical subset" of the broader opinions; i.e., where the concurrence represents a "common denominator" shared by the broader opinion. *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003) (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C.Cir.1991) (en banc)). While some courts have assumed that Justice Stevens's concurrence controls, court that have thoroughly analyzed the issue have disagreed. *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *5–6 (D. Conn. Aug. 9, 2016); *Wittman v. CB1, Inc.*, No. CV 15-105-BLG-BMM, 2016 WL 3093427, at *5–6 (D. Mont. June 1, 2016) (citing cases); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652–53 (S.D. Cal. 2014). This is because the idea that Rule 23 does not trump substantive state laws is *not* a logical subset of the idea that Rule 23 *does* trump substantive state laws. *See, e.g.*, *Aggrenox*, 2016 WL 4204478, at *5–6. In fact, the *Shady Grove* plurality dedicated a portion of its opinion to refuting Justice Stevens's concurrence, 559 U.S. at 410–15, so this concurrence is not a "common denominator" shared by the plurality, *see Aggrenox*, 2016 WL 4204478, at *5. It therefore does not control.

[23]*See Alcan*, 315 F.3d at 189 (where "no 'common denominator' can be said to exist among the Court's opinions," "[t]he only binding aspect of such a splintered decision is its specific result"); *Wittman*, 2016 WL 3093427, at *6 (after concluding that Justice Stevens's concurrence did not control, analyzing issue under pre-*Shady Grove* precedent); *Hydroxycut*, 299 F.R.D. at 653 (same).

[24] *See also Shady Grove*, 559 U.S. at 407 (noting that "we have rejected every statutory challenge to a Federal Rule that has come before us"); *id.* at 411–15 (describing *Sibbach* and *Hanna* as standing for the idea that courts only look to the Federal Rule).

[25] *Allegrino v. Sachetti*, No. 3:14-CV-01865-VAB, 2015 WL 3948986, at *5–6 (D. Conn. June 29, 2015) (citing *Hanna* and applying the *Shady Grove* plurality test); *Kondaur Capital Corp. v. Cajuste*, 849 F. Supp. 2d 363, 370–72 (E.D.N.Y. 2012) (citing *Hanna* and *Sibbach* and looking only to whether the Federal Rule was procedural); *Silverstein ex rel. Tetragon Fin. Grp. Ltd. v.*

11

by the Second Circuit in its original *Shady Grove* opinion.[26] Accordingly, because Rule 23 is

procedural,[27] it preempts the OCPSA's notice requirements.

And even ignoring this, the OCPSA's notice requirements are met here. To whatever

extend Gerber actually needed to be warned that making false health claims about baby formula

is considered deceptive in Ohio, Ohio's attorney general can put defendants on notice by

promulgating rules interpreting the OCSPA or making certain court determinations available

online.[28] Here, the attorney general has published rules that prohibit defendants from making

"any representations" that lack "a reasonable basis in fact." OHIO ADMIN. CODE 109:4-3-10.[29]

The Complaint also identifies a number of posted consent judgments that prohibit false health

claims, including *State ex rel Rogers v. Airborne Health, Inc.*, in which a defendant agreed to

stop misleadingly implying that its product could "mitigate, prevent, treat, or cure . . . allergies,"

and *In re Gateway Distributors, Ltd.*, in which a defendant agreed to stop making health claims

that lacked FDA support. (Compl. ¶ 100 (quotation marks omitted).) Defendant was therefore on

---

*Knief*, 843 F. Supp. 2d 441, 444–45 (S.D.N.Y. 2012) (same); *Hogan v. Novartis Pharm. Corp.*, No. 06 CIV. 0260 BMC RER, 2011 WL 1336566, at *2–3 (E.D.N.Y. Apr. 6, 2011) (same).

[26] The Second Circuit relied on cases like *Hanna* for the idea that Rule 23 would control if it conflicted with New York law (the Court just found that there was no conflict, which led to reversal by the Supreme Court). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F3d 137, 142 (2d Cir. 2008) ("[I]f a state rule is not compatible with a Federal Rule of Civil Procedure . . . [t]he Federal Rule controls . . . so long as that Federal Rule is consonant with the Rules Enabling Act" (quotation marks omitted)).

[27] The *Shady Grove* plurality, concurrence, and dissent all agreed or assumed that Rule 23 was procedural. *See, e.g.*, 559 U.S. at 406–410, 429.

[28] OHIO REV. CODE ANN. § 1345.09(B); OHIO REV. CODE ANN. § 1345.05(A)(3); *see also* Online Public Inspection File, *available at* http://opif.ohioattorneygeneral.gov/.

[29] *See also* OHIO ADMIN. CODE 109:4-3-02 (requiring defendants to conspicuously state "any material exclusions, reservations, [or] limitations" on an offer).

12

notice that making false or misleading allergy claims—and exaggerating FDA support for these claims—would be considered deceptive in Ohio.

Defendant's argument to the contrary is that its *atopic-dermatitis claims* were substantiated, so it was not put on notice by any rules requiring substantiation (Mem. 12–13), but this has no bearing on Defendant's *general* allergy claims, which were false, *see Hasemann*, at *39. As to the published cases, Gerber cites a federal district court case for the idea that only "final [court] determinations"—not consent judgments—can provide notice under the OCSPA. (Mem. 13–14.) However, this Court has noted that, in this Circuit, federal courts interpreting state laws are generally bound by state appellate-court decisions, *Hasemann*, at *25 (citing cases), and Ohio's appellate court has held that "consent judgments"—because they constitute court "determinations"—are sufficient under the OCSPA, *Charvat v. Telelytics*, *LLC*, No. 05AP-1279, 2006 WL 2574019, at *11 (Ohio Ct. App. Aug. 31, 2006). Further, because Ohio's Supreme Court has described the OCSPA as remedial, intended to be interpreted liberally, and designed to deter deceptive conduct by encouraging private suits, *Whitaker*, 855 N.E.2d at 829, it's likely that they would agree with *Charvat*, whose interpretation of the OCSPA would encourage private suits, allow the attorney general to more easily deter deceptive conduct, and generally promote the remedial purposes of the OCSPA. Defendant was thus on notice under the OCSPA.[30]

---

[30] In a footnote, Defendant also argues—without citing any law—that Plaintiffs "allege no facts" to support the idea that Good Start was sold at a premium. (Mem. 11 n.6.) However, (1) allegations of a premium are sufficient, *Hasemann*, No. 48–52, and (2) Plaintiffs provide more than this; actually identifying formulas that sold for less than Good Start during the class period (Compl. ¶ 77). Gerber's only response to this last point is to ask the Court to conclude, as a factual matter, on a motion to dismiss, that this gap in prices was due *entirely* to generic discounting and could not even be *partly* explained by Defendant's allergy claims. Not only is that argument factually improbable, it's procedurally inappropriate, *Hasemann*, at *41 n.22 (citing cases for the idea that factual issues cannot be resolved on a motion to dismiss).

13

### 3.  Consumers have standing under the ODTPA.

Next, Gerber's suggestion that consumers cannot bring claims under the ODTPA fails because it contradicts the plain meaning of the statute. "[S]tatutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009) (internal quotation marks omitted). The ODTPA allows "'[a] person who is injured by a person who commits a deceptive trade practice" to bring suit, and defines "person" as "an individual . . . or any other legal or commercial entity." OHIO REV. CODE ANN. § 4165.03(A)(2); OHIO REV. CODE ANN. § 4165.01(D). The ODTPA thus authorizes individual consumers to bring suit. *Schumacher v. State Auto. Mut. Ins. Co*., 47 F. Supp. 3d 618, 630–33 (S.D. Ohio 2014); *Bower v. Int'l Bus. Machs., Inc*., 495 F. Supp. 2d 837, 843–44 (S.D. Ohio 2007). What courts have disagreed have assumed that the ODTPA was intended to mirror the Lanham Act and ignored the plain language of the statute, in contravention of basic principles of statutory construction. *See Bower*, 495 F. Supp. 2d 843–44.

### 4.  Ms. Wilkerson's NCUDTPA claim is pled with particularity.

Rule 9(b) doesn't apply to NCUDTPA claims,[31] but Plaintiff Wilkerson nevertheless satisfies this standard. Again, the allegations here are essentially the same as the *Hasemann* allegations, which satisfied 9(b). *Hasemann*, at *33–35. For example, Plaintiff has sufficiently detailed the deceptive advertisements that are at issue and how and why such statements were

---

[31] In *CBP Res., Inc. v. SGS Control Servs*., 394 F. Supp. 2d 733 (M.D.N.C. 2005), the court declined "to extend Rule 9(b)'s coverage" to claims brought under the NCUDTPA because the "rationales for the heightened pleading standard in cases of fraud or mistake do not equally apply to deceptive trade practices" *Id*. at 739. Defendant cites *Hilco Transp., Inc. v. Atkins*, No. 14 CVS 8677, 2016 WL 197133 (N.C. Super. Jan. 15, 2016), for the idea that 9(b) applies here, but *Hilco* just noted that the Rule "may" apply to the NCUDTPA, and then declined to address the issue. *Id*. at *10 n.5 (emphasis added).

deceptive or false, including allegations that scientific studies conclusively refuted Gerber's allergy claims and that Gerber misrepresented the degree of FDA support for its atopic-dermatitis claims. (Pt. A(1), *supra*.)

Defendant primarily argues that Plaintiff has failed to allege how its misrepresentations were material. (Mem. 15.) This Court and the *Zakaria* court rejected a similar argument because the plaintiffs alleged that they would not have purchased Good Start if they had known that the general-allergy claims were false, or that the atopic-dermatitis/FDA-certification claims were misleading. *Hasemann*, at *47; *Zakaria I*, 2015 WL 3827654, at *8 n.5. Because Plaintiff Wilkerson has also alleged that Defendant's allergy claims informed her decision to purchase Good Start, and that she would not have paid a premium for the formula if she had known its allergy claims were false and misleading (Compl. ¶¶ 73–74, 78), she has adequately pled materiality.[32]

### B. Plaintiffs sufficiently state common-law claims.

As discussed in detail below, Plaintiffs have properly alleged all the elements—with the requisite particularity—for (1) unjust enrichment, (2) intentional misrepresentation, (3) negligent misrepresentation, and (4) fraudulent concealment. Moreover, for each claim, Plaintiffs have specified the deceptive statements, the "speaker" of those statements, where they were made, and why they are deceptive.[33] (*See, e.g.*, Compl. ¶¶ 118–49; Pt. 1, *supra*.)

---

[32] While admitting Plaintiff specifically alleged reliance on at least one advertisement (Ex. F), Defendant appears to argue in the same breath that Plaintiff has not sufficiently alleged which advertisements she reviewed and relied upon. (Mem. 15.) However, in addition to her allegations regarding Exhibit F, Plaintiff alleges she viewed numerous additional advertisements and relied upon them. (*See e.g.*, Comp. ¶ 73.)

[33] Defendant applied New York law to analyze Plaintiffs' common-law claims (Mem. 15), so Plaintiffs respond by also applying New York law. Should Defendant later apply the law of a different state to address these claims, Plaintiffs reserve their right to address those arguments. (*See also* Pt. E, *infra*.)

**1. Plaintiffs sufficiently allege unjust enrichment.**

Courts routinely find that unjust-enrichment claims can be based on false advertising. In

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013), for example, plaintiffs stated

a claim for unjust enrichment where they alleged that defendants were unjustly enriched "by

their sale of Ester–C Products through the use of false advertising . . . designed to persuade

consumers that Ester–C Products actually provide immune support." *See also Cox v. Microsoft

Corp.*, 8 A.D.3d 39, 778 N.Y.S.2d 147, 149 (2004) (finding plaintiffs' allegations that

defendant's deceptive practices "caused them to pay artificially inflated prices for its products

[sufficient for purposes of] stat[ing] a cause of action for unjust enrichment").

Here, too, Plaintiffs sufficiently allege that Defendant was unjustly enriched by their sales

of Good Start through the use of false advertising. (Compl. ¶¶ 145–49.) Defendant's only citation

to the contrary—*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467

(S.D.N.Y. 2014)—simply dismissed an unjust-enrichment claim because it was duplicative, *id.* at

483, but Defendant never argues that the unjust-enrichment claim here is duplicative.[34]

Defendant's motion to dismiss Plaintiffs' unjust-enrichment claim should thus be denied.

**2. Plaintiffs sufficiently allege intentional misrepresentation.**

---

[34] Plaintiffs note, though, that the Court's recent *Stitt* opinion dismissed an unjust-enrichment claim as being duplicative. To the extent Defendant makes this argument in its Reply, Plaintiffs would point out that their claim is not duplicative if it would survive the dismissal of their other claims. *In re Operations NY LLC.*, 490 B.R. 84, 100 (Bankr. S.D.N.Y. 2013). Here, fraudulent intent and a "special relationship" are not elements of unjust enrichment, so Plaintiffs' unjust-enrichment claim would survive dismissal of their other common-law claims. Plus, damages under the NCDUTPA are sometimes restricted to price premiums, *Strickland v. A & C Mobile Homes*, 321 S.E.2d 16, 19 (N.C. Ct. App. 1984), while damages for unjust enrichment can encompass the entire price of Good Start, *see Hughes*, at 930 F. Supp. 2d at 471–72 (describing an unjust-enrichment claim predicated on the idea that the plaintiffs would not have purchased a product at all but for the defendant's deceptive claims). Plaintiffs' unjust-enrichment claims are therefore not duplicative.

To state an intentional-misrepresentation claim, a "plaintiff must establish that . . . the defendant intended to defraud the plaintiff." *Liberty Mut. Ins. Co. v. Palace Car. Servs. Corp.,* No. 06–cv4881(FB)(CLP), 2007 WL 2287902, at *2 (E.D.N.Y. Aug. 8, 2007). Fraudulent intent exists where a defendant knew its statements were false, and this can be established by alleging that the defendant was aware (for example) of scientific evidence or studies disproving their claims before they were made. *Hughes*, 930 F. Supp. 2d at 472.

Here, Plaintiffs allege that Defendant knew its allergy representations were false when made because—among other things—Defendant was aware of the Lowe study, which it sponsored, and which found no correlation between Good Start and allergy reduction; was aware that there was little support for its atopic-dermatitis claims; and was aware of the FDA's limited endorsement of its health claims. (Compl. ¶¶ 51–52, 130.) *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *25–26 (E.D.N.Y. Aug. 29, 2013), found that "[n]owhere . . . do plaintiffs allege that Frito–Lay knew" its advertisements were false, and is thus inapposite.

### 3. Plaintiffs sufficiently allege negligent misrepresentation.

A claim for negligent misrepresentation is actionable "where the author of [a] statement "has 'some relationship or duty . . . to act with care' vis-à-vis the party at whom the statement is directed." *Hughes*, 930 F. Supp. 2d at 474 (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 583 (2d Cir. 2005)). In *Hughes*, the court concluded that the plaintiffs had pled a special relationship because the defendants suggested that there was scientific support for their advertisements and knew consumers would rely on the validity of the advertisements. *Id.* at 475.

Similarly, here, Plaintiffs have alleged that Defendant suggested there was scientific

17

support for its advertisements (*see* Pt. A.1., *supra*) and "intended that its representations would induce consumers . . . into purchasing Good Start" (Compl. ¶ 143). Plaintiffs have thus alleged a special relationship. Defendant's case, *T.T. Exclusive Cars, Inc. v. Christie's Inc*., No. 96 CIV. 1650 LMM, 1996 WL 737204, at *4 (S.D.N.Y. Dec. 24, 1996), just notes that there can be no special relationship between an auction house and a bidder, which is irrelevant here.

### 4. Plaintiffs sufficiently allege fraudulent concealment.

There is "a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Miele v. Am. Tobacco Co.*, 803, 770 N.Y.S.2d 386 (N.Y. App. Div. 2003); *see also Nasaba Corp. v. Harfred Realty Corp.*, 39 N.E.2d 243, 245 (N.Y. 1942); *Abrams v. Gen. Motors Corp.*, 466 N.Y.S.2d 124 (N.Y. Sup. Ct. 1983).

In *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013), the defendants argued that fraudulent-concealment claims should be dismissed because there was no confidential or fiduciary relationship between the parties. The court denied the motion because "a fraudulent concealment claim may be brought where a defendant has made 'a partial or ambiguous statement' or 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *Id.* (quoting *Brass*, 987 F.2d at 150). Here, too, Plaintiffs have alleged both that Defendant made a partial or ambiguous statement (*see* Compl. ¶¶ 119–22) and that Defendant had superior knowledge that was not available to Plaintiffs (*see* Compl. ¶¶ 122–23). This Court should therefore deny Defendant's motion to dismiss the fraudulent-concealment claims. *See also Stitt*, at *31–33 (upholding fraud allegations premised on deceptive advertising).

### C. The primary-jurisdiction doctrine is irrelevant here.

Defendant argues that the Court should refrain from ruling on Plaintiffs' claims because

the FDA has primary jurisdiction over Defendant's deceptive advertising. (Mem. 18.) As an initial matter, the FDA only regulates product labels, which constitute just a portion of the challenged advertisements here (Compl. Exs. C, D), so the scope of this argument is limited. More importantly, this Court already rejected the same primary-jurisdiction argument in *Hasemann. Id.* at *11−16.

The primary-jurisdiction doctrine "allows a federal court to refer issues extending beyond the conventional experiences of judges . . . to an administrative agency for resolution." *Id.* at *11 (citing *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir. 2006)). "Primary jurisdiction does not extend to a legal question that is within the conventional competence of the courts." *Nat'l Commc'ns Assoc., Inc. v. AT&T Co.*, 46 F.3d 220, 223 (2d Cir. 1995) (citing *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 848 (2d Cir. 1988)).

In particular, whether a defendant has "marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) (citing *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009)). Accordingly, numerous courts throughout the nation have declined to invoke primary jurisdiction in consumer class actions where "the Court's task is to assess the potential consumer confusion caused by the manner in which [a product] has been marketed." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-cv-00585 (AJN), 2014 U.S. Dist. LEXIS 76752, at *46 (S.D.N.Y. June 3, 2014); *Reid v. GMC Skin Care USA Inc.*, No. 815CV277BKSCFH, 2016 WL 403497, at *11 (N.D.N.Y. Jan. 15, 2016).[35]

---

[35] *See also Goldemberg*, 8 F. Supp. 3d at 476 (N.D. Cal. 2014) (citing *Frito-Lay*, 2013 WL 4647512, at *8); *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062 (N.D. Cal. 2013); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311,

In the present case, the issue is whether Defendant's marketing of its infant formula was deceptive to consumers, and thus the claims fall within the purview of this Court. As noted by this Court in *Hasemann*, in rejecting Gerber's primary-jurisdiction-doctrine argument: "Plaintiffs' false advertising claims do not involve technical considerations within the particular expertise of either the FDA or the FTC. The claims require a determination of whether a reasonable consumer would be deceived by the Infant Formula, an issue that is within the conventional experience of judges." *Id.* at *13–14; *Zakaria I*, 2015 WL 3827654, at *7 (same).

And while Defendant claims that the "danger of inconsistent rulings" supports the application of primary jurisdiction (Mem. 19), the concern under this factor is not—as Defendant suggests—the potential for inconsistent rulings among private actions.; the concern is whether the FDA might issue guidance conflicting with the litigation at hand, *see Hasemann*, at *13 (citing cases). Here, there is no pending or past FDA action that will result in a conflict: the FDA has commented on only one of the labels at issue here[36] and—as noted by Defendant—the agency simply warned Gerber that it was deceptive, Gerber took corrective actions, and the agency closed its investigation.[37] A finding that consumers were actually deceived by this label would not conflict with this determination; it would comport with it.[38] There is therefore no reason to stay this case.[39]

---

1348–51 (S.D. Fla. 2013).

[36] Compl. Ex. I at 1–4 (2014 FDA Warning Letter; describes "1st and ONLY Routine Formula TO REDUCE RISK OF DEVELOPING ALLERGIES" as misleading).

[37] *See Hasemann*, at *14–15; Mem. 19.

[38] Defendant also summarily states that prior "application to an agency" supports the application of the primary-jurisdiction doctrine. (Mem. 19.) But, as noted in *Hasemann*, "[b]ecause the FDA has concluded its investigation and no other application has been filed with the FDA or the FTC," this "factor weighs against applying the doctrine." *Id.* at *14.

[39] To the extent Defendant argues that the present action should be stayed pending resolution of the FTC claim, Defendant's argument should be rejected. *First*, this argument was rejected—

**D. Plaintiffs have third-party standing to seek injunctive relief.**

Though this Court has held that consumers lack individual standing to seek injunctive relief for misleading advertising, Plaintiffs suggest that they have *third-party* standing. Third-party standing exists where "some hindrance" prevents third parties from protecting their own interests.[40] This occurs where, by bringing suit, third parties would paradoxically "destroy the very [rights] they sought to protect," or where "insurmountable procedural obstacles"—like "imminent mootness"—prevent them from bringing suit. *Miller v. Albright*, 523 U.S. 420, 449–50 (1998) (citing cases). Here, if third-party consumers cannot sue to enjoin Gerber's false advertising without also precluding themselves from obtaining an injunction (on what are essentially mootness grounds), then they are ideally situated to have the named Plaintiffs advocate on their behalf. Third-party standing is thus appropriate. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 196–97 (1976) (appellant had third-party standing to seek injunctive relief on behalf of third-party consumers).

**E. Plaintiffs' class allegations are sufficient.**

Finally, Gerber asks the Court to strike Plaintiffs' nationwide class allegations because, according to Gerber: (i) Plaintiffs cannot satisfy commonality and predominance (Mem. 22–24), and (ii) differences in state law preclude class certification (*id.* at 24–25). Gerber's arguments,

---

twice—in *Hasemann*. *Id.* at *16; Order, *Hasemann*, No. 1:15-cv-02995-MKB-RER (E.D.N.Y. Oct. 15, 2015), ECF No. 16. *Second*, aside from the fact that courts are capable of resolving deceptive-advertisement claims, the FTC is not currently exercising its regulatory authority to decide any technical issues relevant to this case; it's suing Gerber—like Plaintiffs—in federal court for false and misleading advertising. *Hasemann*, at *16. The primary-jurisdiction doctrine is thus inapplicable. *Id.* (citing cases).

[40] *Cicchetti v. Davis*, No. 07 CIV. 10546 (WCC), 2008 WL 619013, at *4–5 (S.D.N.Y. Mar. 5, 2008) (internal quotation marks omitted). The named plaintiffs also need to have been injured, and they would need to be effective proponents of the third parties' rights; both circumstances that exist here.

however, are premature, and for this reason alone the Court should deny its motion to strike. Moreover, (i) Plaintiffs have plausibly alleged they will be able to satisfy commonality and predominance and (ii) Gerber has not identified any material conflicts between the state laws at issue here.

Motions to strike "are not favored" and rarely granted.[41] Motions to strike class allegations are particularly disfavored because they obviate the possibility of class certification before class discovery is completed. *Gitman*, 2015 WL 5122564, at *3; *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012); *Belfiore*, 94 F. Supp. 3d at 447; *see also De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013). Motions to strike class claims are considered premature if the issues raised are the same as the ones that would be decided in a class-certification motion, and motions to strike are routinely denied on this basis. *Motta*, 2016 WL 2642229, at *5 (S.D.N.Y. May 4, 2016); *accord Blagman v. Apple Inc.*, No. 12 CIV. 5453 ALC JCF, 2013 WL 2181709, at *8 (S.D.N.Y. May 20, 2013); *Bank v. Am. Home Shield Corp.*, No. 10-CV-4014, 2013 WL 789203, at *3 (E.D.N.Y. Mar. 4, 2013).[42]

Here, Gerber's motion is premature because it asks the Court to rule on the same issues that the Court would decide under Rule 23, *i.e.*, commonality and predominance. (*See* Mem. 22–

---

[41] *Gitman v. Pearson Educ., Inc.*, No. 14 CIV. 8626 GBD, 2015 WL 5122564, at *3 (S.D.N.Y. Aug. 31, 2015) (quotation marks omitted); *accord Motta v. Glob. Contract Servs. Inc.*, No. 15 CV 8555 (LGS), 2016 WL 2642229, at *5 (S.D.N.Y. May 4, 2016); *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *18 (E.D.N.Y. Mar. 31, 2016) (Brodie, J.); *Belfiore*, 94 F. Supp. 3d at 447.

[42] *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 388 (E.D.N.Y. 2012); *see also Cardoza v. Bloomin' Brands, Inc.*, No. 2:13-CV-01820-JAD, 2014 WL 3748641, at *6 n.50 (D. Nev. July 30, 2014); *Lucas v. Chesapeake Expl., L.L.C.*, No. 2:12-CV-00592-JRG, 2013 WL 5200046, at *3–4 (E.D. Tex. Sept. 16, 2013); *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 909 (N.D. Cal. 2011).

25.) Gerber even makes this request explicit; titling its argument "Issues of Fact Defeat Commonality and Predominance." (*Id.* at 22.) Similarly, whether material differences between state laws render the proposed nationwide class unmanageable "is not independent of the class certification inquiry" and should not be analyzed prior to that stage of the litigation. *Bank*, 2013 WL 789203, at *3; FED. R. CIV. P. 23(b)(3)(D); *see also Gold*, 2015 WL 7888906, at *14 (declining to address choice-of-law analysis at motion-to-dismiss stage).[43] Gerber's motion is thus premature, as evidenced by its repeated reliance on decisions issued after a full class-certification inquiry, and not at the pleading stage.[44] Gerber's motion should therefore be denied.

But even assuming Gerber's arguments are not premature, the Court should reject them.

*First*, Gerber argues that reliance (among other things) is an individualized inquiry and then concludes—in a single paragraph—that it will override any common issues. (Mem. 23–24.) However, the Second Circuit has held that fraud and negligent-misrepresentation claims should be certified when they're based on uniform misrepresentations (as they are here), despite requiring reliance; so even if this were a class-certification motion, Gerber's argument would fail. *See Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1253 (2d Cir. 2002). Of course, this is a motion to strike, and Plaintiffs' burden is even easier: the question is not whether they actually satisfy predominance, but whether Defendant has demonstrated that it will be *impossible*—after

---

[43] Gerber cites *Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 WL 1455476 (W.D.N.Y. May 25, 2006), for the idea that class allegations can be struck on a motion to dismiss, but *Glewwe* relied on two cases from the '70s for that proposition and runs contrary to the current weight of authority. *See Davenport v. Wendy's Co.*, No. 2:14-CV-00931 JAM, 2014 WL 3735611, at *9–10 (E.D. Cal. July 28, 2014) (rejecting *Glewwe*).

[44] Gerber cites *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), *Goodman v. Genworth Financial Wealth Management, Inc.*, 300 F.R.D. 90 (E.D.N.Y. 2014), *Pagan v. Abbott Laboratories, Inc.*, 287 F.R.D. 139 (E.D.N.Y. 2012), *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005), and *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) (Mem. 21–24).

discovery—for Plaintiffs to satisfy Rule 23. *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015); *Calibuso*, 893 F. Supp. 2d at 390. Here, again, the Second Circuit has already rejected Defendant's primary argument against certification, *Moore*, 306 F.3d at 1253, and Plaintiffs identify a number of common questions that can be satisfied with common evidence, including whether Defendant's allergy claims were false and whether these claims allowed Defendant to sell Good Start at a premium (*see, e.g.*, Compl. ¶ 86). Class certification is therefore possible, at a minimum, and Defendant has failed to meet its burden.

*Second*, Gerber's conflict-of-law argument is wrong. As an initial matter, most courts in the Second Circuit "have declined to consider potential variation in state law among the plaintiffs' claims" at class certification and noted that state-to-state variations in the common law will not usually effect certification. *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305 (E.D.N.Y. 2006) (citing cases). Furthermore, "the crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 126–27 (2d Cir. 2013); *R.B. Dev., Co. v. Tutis Capital LLC*, No. 12CV1460CBASMG, 2015 WL 10567830, at *3 (E.D.N.Y. Nov. 6, 2015) ("An actual conflict exists when there are relevant substantive differences that could have a significant impact on the outcome of the case." (internal quotation marks omitted)).

Here, though Gerber makes conclusory assertions that "conflicts exist among the fifty states' laws" (Mem. 24), it fails to identify *any* of these conflicts, let alone conflicts that—based on the facts of this case—make a "material difference that would affect the merits of the class's . . . claims at trial." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014) (certifying nationwide class bringing claims for fraud and negligent misrepresentation in food labeling

24

case). Gerber even analyzes Plaintiffs' common-law claims under *New York law*, perhaps in

recognition of the fact that whatever legal conflicts exist between Ohio, North Carolina, and New

York are negligible. (Mem. 15.) In any event, because "the possibility that differences . . .

between relevant state laws might arise should not deter certification of a class," *Nigeria.*, 233

F.R.D. at 306, *a fortiori*, the possibility of differences between relevant state laws should not

lead to dismissal of class allegations on a motion to strike.

## IV.  CONCLUSION

As described above, Plaintiffs have sufficiently alleged that Defendant's allergy claims

were false and misleading; the Court should thus deny Defendant's Motion to Dismiss, Stay, and

Strike in its entirety, as it did in *Hasemann*.[45]


DATED: September 30, 2016                   Respectfully submitted,

                                            TAUS, CEBULASH & LANDAU, LLP

                                      By: /s/ *Miles Greaves*_____
                                            Miles Greaves
                                            Brett Cebulash
                                            Kevin Landau
                                            80 Maiden Lane, Suite 1204
                                            New York, NY 10038
                                            Telephone: (646) 873-7654
                                            Facsimile: (212) 931-0703
                                            Email:   *mgreaves@tcllaw.com*
                                                     *bcebulash@tcllaw.com*
                                                     *klandau@tcllaw.com*

                                            REESE LLP
                                            Michael R. Reese
                                            George V. Granade
                                            100 West 93rd Street, 16th Floor

---

[45] If the Court grants any part of Defendant's Motion, Plaintiffs hereby respectfully request that
the Court grant leave to amend. Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182
(1962).

New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email:      *mreese@reesellp.com*
            *ggranade@reesellp.com*

**BERGER & MONTAGUE, P.C.**
Shanon J. Carson
Sarah R. Schalman-Bergen
Shoshana Savett
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
Email:      *scarson@bm.net*
            *sschalman-bergen@bm.net*
            *stsavett@bm.net*

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis
Marisa Glassman
201 N. Franklin Street, 7th Floor
Tampa, Florida  33602
Telephone: (813)275-5275
Facsimile: (813) 222-4736
Email:      *jyanchunis@forthepeople.com*
            *mglassman@forthepeople.com*

*Attorneys for Plaintiffs and the Proposed Class*

26

## CERTIFICATE OF SERVICE

I, Miles Greaves, hereby certify as follows:

I am an attorney-at-law of the State of New York and an associate at the firm Taus,

Cebulash & Landau, LLP, attorneys for Plaintiffs in the above matter. I hereby certify that on

September 30, 2016, I caused a copy of Plaintiffs' Memorandum of Law in Opposition to

Defendant's Motion to Dismiss, Stay, and Strike Allegations from Plaintiffs' Class-Action

Complaint and accompanying exhibits to be served on the following counsel by email:

    Geoffrey W. Castello
    David I. Zalman
    Jaclyn M. Metzinger
    101 Park Avenue
    New York, New York 10178
    (T): (212) 808-7800
    (F): (212) 808-7897
    gcastello@kelleydrye.com
    dzalman@kelleydrye.com
    jmetzinger@kelleydrye.com

    *Attorneys for Defendant Gerber Products Co.*

I also certify that hard copies of these materials were mailed to the above-mentioned counsel on

September 30, 2016.

            /s/ *Miles Greaves*_____
            Miles Greaves
            TAUS, CEBULASH & LANDAU, LLP
            80 Maiden Lane, Suite 1204
            New York, NY 10038
            T: (212) 931-0704
            F: (212) 931-0703
            mgreaves@tcllaw.com